United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T-MOBILE WEST LLC, et al.,<br>Plaintiffs,<br>v.<br>SAN BENITO COUNTY, et al.,<br>Defendants. | Case No. 25-cv-07760-SVK<br><br>**ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 37 |

This action arises from Defendant San Benito County's denial of an application by Plaintiff VB BTS II, LLC ("Vertical Bridge") for a conditional use permit ("CUP") to construct a cell phone tower in unincorporated San Benito County. Dkt. 1. Plaintiff T-Mobile is alleged to be a third-party beneficiary of Vertical Bridge's application for a CUP. *Id.* ¶ 1. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 14, 17, 45.

Now before the Court is Plaintiffs' motion for summary judgment. Dkt. 37. The motion is suitable for determination without a hearing. Civ. L.R. 7-1(b). For the reasons that follow, Plaintiffs' motion for summary judgment is **GRANTED** as to the first cause of action alleging that Defendants' denial was an effective prohibition of personal wireless services, and the motion is **DENIED** as to the second cause of action alleging that Defendants' denial was not supported by substantial evidence.

## I. BACKGROUND

On May 31, 2024, Vertical Bridge filed an application for a CUP to construct a wireless telecommunications facility in the form of a 90-foot "monopine" wireless communication tower with ground equipment area (the "Proposed Tower") to be located at 358 Seely Avenue (Assessor's Parcel 025-320-001), a 2.36 acre tract of land that includes an existing residence and is located in unincorporated San Benito County, California, approximately 9 miles west of

United States District Court
Northern District of California

downtown San Juan Bautista (the "Proposed Site"). Dkt. 37-2 at 130-134; Dkt. 37-3 at 95. Vertical Bridge is an owner and operator of communications infrastructure that specializes in developing and maintaining physical components for wireless networks, such as cellular towers. Dkt. 37-3 at 95. T-Mobile is a wireless service provider who intends to lease space on the Proposed Tower to house its equipment and offer wireless services to customers. *Id.*

Vertical Bridge's project application identified a gap in coverage. *See* Dkt. 37-4. Vertical Bridge sought to construct the Proposed Tower to remedy the alleged service gap. *Id.* at PDF p. 3. The Proposed Tower would have an antenna tip height of 85 feet. *Id.*; Dkt. 37-3 at PDF p. 6. The project application included a request for a variance because the proposal did not meet the 500-foot residential setback requirement under the San Benito County Code. Dkt. 37-2 at PDF p. 4; Dkt. 37-3 at PDF p. 8.

Vertical Bridge's project application stated that it selected the Proposed Site because it is located in a targeted geographic "search ring" that satisfies the requirements of T-Mobile's network and because it provides advantageous propagation pathways. Dkt. 37-3 at PDF pp. 3-4, 8. The application stated that before identifying the Proposed Site, Vertical Bridge had analyzed the search ring and surrounding areas for any existing structures where it could co-locate equipment. Dkt. 37-4 at PDF p. 10; Dkt. 37-6. Verizon Bridge's application also discussed other locations within the search ring that it had considered and its reasons for rejecting them. *Id.*

The application included a certification from a T-Mobile engineer that the Proposed Tower will comply with all federal standards for potential Radio Frequency Electromagnetic Fields ("RF-EME") exposure. Dkt. 37-10.

On March 5, 2025, the County Development Staff ("Staff") delivered a report to the Planning Commission recommending approval of the application for the Proposed Tower. Dkt. 37-5. The Staff found that the Proposed Tower was consistent with the County's General Plan and with the County's policy of developing and expanding telecommunications facilities that fill a gap in wireless coverage and ensuring that residents and businesses have access to telecommunications services. *Id.* at PDF p. 9. The Staff also found that the aesthetic design of the Proposed Tower "minimizes visibility using Stealth Design" and "has appropriate colors,

screening, disguising, and landscaping that is compatible with the surrounding structures and natural environments." *Id.* at PDF p. 10. The Staff found compliance with County Code provisions regarding efforts to find a co-location site or a different location. *Id.* at PDF pp. 8-9 In addition, the Staff found that the Proposed Tower would not be adverse to public health, safety, or the general welfare of the community. *Id.* at 114-15.

The Planning Commission held a public hearing on March 19, 2025, to review the application for the Proposed Tower. *See* Dkt. 37-12. The Planning Commission denied the application, concluding that the Proposed Tower failed to meet the required findings for a CUP and variance because: (1) the Proposed Tower "may adversely affect public health, safety, and welfare due to its proximity to sensitive receptors, including nearby residences and a daycare facility"; (2) Plaintiffs "did not sufficiently demonstrate that no feasible alternative sites or co-location opportunities were available"; and (3) the Commission had concerns "related to the project's location and potential impacts on surrounding sensitive receptors" unrelated to RF emissions. *Id.* at PDF pp. 3-4. The Planning Commission issued a written decision on April 16, 2025, formally denying the application. *Id.* at PDF p. 5.

On April 25, 2025, Vertical Bridge appealed the Planning Commission's denial to the Board of Supervisors ("Board"). Dkt. 37-13. Vertical Bridge stated eight grounds for appeal, including that the Planning Commission's findings were not supported by substantial evidence and relied on considerations that are preempted by 47 U.S.C. § 332(c)(7)(B)(iv) and that the denial effectively prohibits wireless service in the coverage area and fails to meet the federal "least intrusive means" standard in the Ninth Circuit. *Id.*; Dkt. 37-11; Dkt. 37-14.

The Board held a public hearing on June 24, 2025, during which it received oral and written testimony. *See* Dkt. 37-11 at PDF p. 3. Following the hearing, the Board affirmed the Planning Commission's denial. *Id.* at PDF pp. 4-13. The Board provided responses to each of Vertical Bridge's grounds for appeal in its written Resolution memorializing the denial of the appeal on August 12, 2025. *Id.*

Plaintiffs filed the complaint in this action on September 11, 2025. Dkt. 1. The complaint contains causes of action seeking declaratory and injunctive relief for (1) effective prohibition of

United States District Court
Northern District of California

the provision of personal wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II); and (2) denial of the CUP application without substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii). *Id.* Plaintiffs seek summary judgment in their favor on both claims. Dkt. 37. According to Plaintiffs, "[s]hould the Court find in Plaintiffs' favor on either claim, they are entitled to the complete relief they seek" in this action. Dkt. 37 at 10 (citing *Natl. Tower, LLC v. Plainville Zoning Bd. Of Appeals*, 297 F.3d 14, 20 (1st Cir. 2002)).

## II. SUMMARY JUDGMENT LEGAL STANDARD

A party may move for summary judgment as to any claim, any defense, or any part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. *Id.* A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the party moving for summary judgment has the burden of persuasion at trial, such as where the moving party seeks summary judgment on its own claims or defenses, the moving party must establish "beyond controversy every essential element of its [claim]." *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted). Where the moving party seeks summary judgment on a claim or defense on which the opposing party bears the burden of persuasion at trial, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not

produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

"The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). However, the party opposing summary judgment must direct the court's attention to "specific, triable facts." *So. Cal. Gas*, 336 F.3d at 889. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *City of Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In other words, "whatever establishes a genuine issue of fact must both be in the district court file and set forth in the response." *Id.* at 1029; *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

## III. REQUEST FOR JUDICIAL NOTICE

In support of their motion for summary judgment, Plaintiffs filed a request for judicial notice of selected sections of the County Code and County General Plan and a September 2018 Order of the Federal Communications Commission. Dkt. 38.

Federal Rule of Evidence 201(b) allows a court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Public records such as the County Code and County General Plan are a proper subject of judicial notice. *See Pastore v. County of Santa Cruz*, No. 15-cv-01844-EJD,

2024 WL 1057470, at *4 (N.D. Cal. Mar. 11, 2024) (taking judicial notice of section of county code); *Helicopters for Agriculture v. County of Napa*, No. C 18-06124-WHA, 2019 WL 6250907, at *3 (N.D. Cal. Nov. 22, 2019) (taking judicial notice of excerpts of county code and general plan). Judicial notice of records of administrative bodies is also appropriate. *See MetroPCS Cal., LLC v. Reynolds*, No. 3:17-cv-05959-JD, 2023 WL 4993673, at *11 n.5 (N.D. Cal. Aug. 4, 2023) (taking judicial notice of FCC orders).

Accordingly, Plaintiffs' unopposed request for judicial notice is **GRANTED.** Although the Court takes judicial notice of the existence and contents of the documents at issue, it will not take judicial notice of the underlying truth of any factual assertions therein.

## IV. DISCUSSION

### A. First Cause of Action: Effective Prohibition of Provision of Personal Wireless Services

#### 1. Legal standard

The federal Telecommunications Act of 1996 ("TCA") includes the following provision:

> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--
>
> []
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7)(B). A service provider asserting a claim under this section has the burden of showing that the denial of its proposal will effectively prohibit the provision of services. *T-Mobile USA, Inc. v. Anacortes,* 572 F.3d 987, 997-98 (9th Cir. 2009).

In *MetroPCS, Inc. v. City & Cnty. of San Francisco*, the Ninth Circuit set forth a two-part test for establishing an effective prohibition, requiring a showing that: (1) there is a significant gap in personal wireless service; and (2) the proposed facility is the least intrusive means of remedying that gap. 400 F.3d 715, 731-735 (9th Cir. 2005) ("*MetroPCS v. San Francisco").* A "significant gap" in service "exists whenever a provider is prevented from filling a significant gap in *its own* service coverage." *Id.* at 733 (emphasis in original). To satisfy the "least intrusive



United States District Court
Northern District of California

means" element, "the provider has the burden of showing the lack of available and technologically feasible alternatives." *City of Anacortes*, 572 F.3d at 996 (citations omitted). The provider must "show that the manner in which it proposes to fill the significant gap in service is the *least intrusive on the values that the denial sought to serve*." *Id.* at 995 (emphasis in original; internal quotation marks and citation omitted). A provider may make a prima facie showing of an effective prohibition "by submitting a comprehensive application, which includes consideration of alternatives, showing that the proposed [facility] is the least intrusive means of filing (sic) a significant gap." *Id.* at 998. Though a "locality is not compelled to accept the provider's representations," "when a locality rejects a prima facie showing, it must show that there are some potentially available and technologically feasible alternatives." *Id.* at 998.

Plaintiffs argue that a 2018 Federal Communications Commission ("FCC") Declaratory Ruling, which was affirmed by the Ninth Circuit, "explained that the two-part test used by courts, including the Ninth Circuit, was incorrect." Dkt. 37 at 11-12 (citing *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Red 9088, ¶ 37 (2018), *aff'd, City of Portland v. United States*, 969 F.3d 1020, 1035 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2855 (2021)). According to Plaintiffs, the correct legal test for effective prohibition claims instead requires only a showing that "a state or local government materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service," including not only filling a service gap but also improving service, densifying a network, or adding network capacity. Dkt. 37 at 11-12; *see also* Dkt. 38-4 (2018 FCC Ruling). Plaintiffs characterize the "significant gap" test as more "narrow" than the "materially inhibits" standard. Dkt. 37 at 12. Plaintiffs nevertheless argue that the County's denial of Plaintiffs' application in this case violates both standards. *Id.* at 12-18. Defendants do not address Plaintiffs' argument that the "materially inhibits" standard applies and address only the "significant gap" standard. *See* Dkt. 42.

Notwithstanding Plaintiffs' argument that the "materially inhibits" standard now applies, courts in this District continue to apply the "significant gap" standard. *See, e.g., GTE Mobilnet of Cal. Ltd. P'ship v. City of Berkeley,* No. 20-CV-05460-DMR, 2023 WL 2648197, at *24 (N.D.

Cal. Mar. 27, 2023) (*"City of Berkeley I"*); *New Cingular Wireless PCS, LLC v. Cnty. of Marin, Cal.*, No. 20-cv-07915-SI, 2021 WL 5407509, at *9 (N.D. Cal. Nov. 18, 2021). Because the Court determines that the County's denial constitutes an effective prohibition even under the "significant gap" standard that Plaintiffs view as more narrow than the "materially inhibits" standard, the Court will apply the traditional two-part standard set forth in *MetroPCS v. San Francisco* and subsequent cases.

**2. Analysis**

The service provider "makes a prima facie showing of effective prohibition by submitting a comprehensive application, which includes consideration of alternatives, showing that the proposed [facility] is the least intrusive means of filing (sic) a significant gap." *City of Anacortes*, 582 F.3d at 998. Although a locality is not compelled to accept the provider's representations, when it rejects the provider's prima facie showing, "it must show that there are some potentially available and technologically feasible alternatives." *Id.*

In support of their motion for summary judgment, Plaintiffs provided evidence including the application materials submitted to the County which, as described in section I above, identified a significant gap in coverage and discussed alternative locations within the relevant area that it had considered and its reasons for rejecting them. Plaintiffs have also presented in support of their motion for summary judgment an expert declaration and report from Richard Conroy, whom they retained as a radio frequency ("RF") engineering expert. Dkt. 37-15, 37-16. Together with their reply, Plaintiffs also submitted a reply declaration from Mr. Conroy. Dkt. 43-3. Mr. Conroy's expert report explains his analytical methodologies and includes his opinions that T-Mobile has a significant gap in service and performance standards in the relevant area, and that the proposed site is the least intrusive means of remedying the significant gap. Dkt. 37-16.

Defendants criticize Mr. Conroy's opinions and methodology but do not offer any evidence from a rebuttal expert. *See* Dkt. 42, 41-2, 41-3. Defendants' opposition to Plaintiffs' motion for summary judgment focuses primarily on the "significant gap" element of a claim for effective prohibition of wireless services. *See* Dkt. 42 at 9-17. They argue that Mr. Conroy should have conducted additional tests of signal strength and fault him for using an "industry-set"



United States District Court
Northern District of California

standard for the rate of dropped calls. *Id.* Defendants also briefly address the "least intrusive means" element, arguing that "Plaintiffs failed to submit to the County sufficient evidence to allow a meaningful comparison of alternative designs or sites." *See* Dkt. 42 at 17-18.

The evidence submitted by Plaintiffs, including the materials submitted with the project application and as further reinforced by Mr. Conroy's expert report, is sufficient to establish a prima facie case that a significant gap in service exists in the relevant area and that the proposed project is the least intrusive means to remedy that gap. *See City of Anacortes*, 572 F.3d at 998. Plaintiffs are correct in arguing that Defendants cannot rebut such evidence solely through attorney argument and without expert evidence. *See* Dkt. 37 at 18; Dkt. 43 at 6-9. Where, as here, a public entity "attempts to poke holes in [a wireless provider's] evidence of a coverage gap by claiming certain information is missing or not explained" but the public entity "offers *no* contrary evidence to refute [the wireless provider's] evidence," other district courts (including in this Circuit) have granted summary judgment to wireless providers on claims for effective prohibition. *New Cingular Wireless PCS, LLC v. Kootenai Cnty., Idaho*, No. 2:23-CV-00124-AKB, 2025 WL 563911, at *12 (D. Idaho Feb. 20, 2025) ("Because the County has submitted no evidence refuting or contradicting AT&T's evidence showing the existence of a significant gap in coverage, summary judgment in favor of AT&T on this issue is appropriate"); *see also T-Mobile Northeast, LLC v. Village of Chestnut Ridge*, No. 23 CV 5852 (VB), 2026 WL 2731665, at *15 (S.D.N.Y. Sept. 16, 2026) ("no genuine dispute of material fact exists that the Facility represents the least intrusive means available to remedy T-Mobile's significant gap in coverage" where Defendants did not produce an expert report to rebut the conclusions of T-Mobile's expert that a significant wireless coverage gap and that proposed facility was least intrusive means available to remedy the gap in service); *New Cingular Wireless PCS, LLC v. The Vill. of Oyster Bay Cove*, No. 22-CV-07807 (JMA) (ST), 2026 WL 876510, at *10 (E.D.N.Y. Mar. 31, 2026) ("In sum, AT&T sufficiently demonstrated a gap in coverage, and, in the absence of any contrary technical evidence, Defendants' speculative criticisms about AT&T's evidence do not create a genuine dispute of material fact").

Defendants appear to argue that they are not required to submit expert evidence because

United States District Court
Northern District of California

Plaintiffs have not made even a prima facie showing of effective prohibition. *See, e.g.,* Dkt. 42 at 21. Defendants cite *GTE Mobilnet of Cal. Ltd. P'ship v .City of Berkeley*, No. 20-CV-05460-DMR, 2024 WL 4581307, at *8 (N.D. Cal. Oct. 25, 2024) (*"City of Berkeley II*"), as a case "directly on point" because the court denied the wireless carrier's motion for summary judgment on the significant gap issue and found that the carrier had not carried its burden on that issue even after trial. Dkt. 42 at 15-16. However, that case is distinguishable because one of the defendants presented an "expert in the fields of forensic cell phone analysis, cell tower coverage analysis, radio frequency propagation mapping, and drive testing" to rebut the expert evidence offered by the plaintiff wireless company. *See City of Berkeley II,* 2024 WL 4581307, at *1, 6; *see also City of Berkeley I,* 2023 WL 2648197, at *25 (discussing expert witness declaration submitted by intervenor-defendants on motion for summary judgment); *see also New Cingular Wireless PCS, LLC v. City of W. Covina, California*, No. 222CV01642MEMFJCX, 2023 WL 4422835, at *14 (C.D. Cal. July 10, 2023) (denying both sides' motions for summary judgment where "there exists a dispute between AT&T's expert and the City's expert as to whether a significant service gap exists in the area of the Proposed Facility").

In this case, the Parties proposed a case schedule that permitted both sides to designate experts and conduct expert discovery. Dkt. 30. The Court adopted that schedule and extended the expert deadlines several times at the joint request of the Parties. Dkt. 31, 32, 33, 34, 35. Thus, Defendants had ample opportunity to retain an expert but were either unable or chose not to do so. In any event, Defendants did not submit any expert evidence or other technical evidence to rebut the evidence from Plaintiffs' expert in support of their motion for summary judgment.

Plaintiffs have presented sufficient evidence that there is a significant gap in personal wireless service in the relevant area and that the Proposed Tower is the least intrusive means of remedying that gap. Defendants have failed to rebut that evidentiary showing. Accordingly, the Court **GRANTS** Plaintiffs' motion for summary judgment on their claim for effective prohibition of personal wireless service and holds that the County's denial of the CUP violated the TCA.

**B. Second Cause of Action: Denial Not Supported by Substantial Evidence**

Because Plaintiffs' claim for "effective prohibition" is dispositive, the Court need not

reach their "substantial evidence" claim. *See New Cingular Wireless PCS, LLC v. Cnty. of Ventura, California*, No. 2:21-CV-03079-SVW (JPRX), 2022 WL 22879626, at *3 (C.D. Cal. Feb. 22, 2022); *see also City of Anacortes*, 572 F.3d at 997-98 (holding that effective prohibition standard may be violated even if substantial evidence supports a local authority's decision under the applicable state and local law). For completeness, however, the Court explains briefly why genuine disputes of material fact preclude summary judgment in favor of Plaintiffs on their claim that the County's denial was not supported by substantial evidence.

**1. Legal standard**

The TCA "generally preserves local zoning authority over the construction of wireless communications facilities, but pursuant to the TCA (a) any denial of an application to install or modify a wireless facility 'shall be in writing and supported by substantial evidence contained in a written record' (47 U.S.C. § 332(c)(7)(B)(iii)); and (b) local governments may not regulate wireless facilities based on their RF emissions, so long as those emissions are below the limits set by the FCC (47 U.S.C. § 332(c)(7)(B)(iv))." *GTE Mobilnet of California Ltd. P'ship v. Town of Danville*, No. 19-CV-01886-JCS, 2020 WL 210323, at *5 (N.D. Cal. Jan. 14, 2020); *see also T-Mobile South, LLC v. City of Roswell, Ga.,*574 U.S. 293, 300, 302 (2015) (holding that TCA requires localities to provide reasons in writing when they deny applications to build cell phone towers). The Supreme Court has held that the locality's given reasons for denying an application "need not be elaborate or even sophisticated, but rather [] simply clear enough to enable judicial review." *T-Mobile South, LLC v. City of Roswell, Ga.,*574 U.S. at 302.

"While the TCA does not define 'substantial evidence,' courts have held that that the applicable standard is the traditional standard of judicial review for agency decisions." *Town of Danville*, 2020 WL 210323, at *5 (citing *Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 726 (9th Cir. 2009) and *Metro PCS, Inc. v. City and Cnty. of San Francisco*, 400 F.3d 723[1]). The standard is deferential to the administrative agency. *Town of*

[1] *MetroPCS v. San Francisco* was abrogated on other grounds in *T-Mobile South, LLC v. City of Roswell, Ga.,* where the Supreme Court held that a locality's reasons for denying a siting application need not appear in the same writing that conveys the locality's denial. 574 U.S. 293, 302 (2015).

*Danville,* 2020 WL 210323, at *5. "A municipality's valid decision under local law will be upheld under TCA's substantial evidence requirement where it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *City of Palos Verdes Estates*, 583 F.3d at 726). "Denial of application must be 'authorized by applicable local regulations and supported by a reasonable amount of evidence (i.e., more than a "scintilla" but not necessarily a preponderance).'" *Town of Danville,* 2020 WL 210323, at *5 (quoting *MetroPCS v. San Francisco*, 400 F.3d at 725). Courts may "neither engage in [their] own fact-finding nor supplant the Town Board's reasonable determinations." *Town of Danville,* 2020 WL 210323, at *5 (quoting *MetroPCS v. San Francisco*, 400 F.3d at 725).

"[T]he substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law.*" *Town of Danville,* 2020 WL 210323, at *6 (quoting *MetroPCS v. San Francisco*, 400 F.3d at 723-24) (emphasis in original)). The court must first evaluate the "evidentiary support (or lack thereof)" for the public entity's decision relative to state and local regulations. *Town of Danville,* 2020 WL 210323, at *6. "If the decision fails that test it, of course, is invalid even before the application of the TCA's federal standards." *Id.*

"The party seeking to overturn the local government's decision carries the burden of showing the decision was not supported by substantial evidence." *Cnty. of Marin*, 2021 WL 5407509, at *6 (citations omitted).

**2. Analysis**

In denying Plaintiffs' appeal from the Planning Commission's denial of the CUP, the Board made eight findings (numbered A1 through A8) regarding the issues raised by Plaintiffs on appeal and six findings (numbered B1 through B6) "based on the evidence presented in the record and the testimony provided during the appeal hearing." Dkt. 37-11. In their motion for summary judgment, Plaintiffs identify and group within these other findings three "primary findings" underpinning the County's denial that Plaintiffs claim lacked substantial evidence: (1) the finding that the project was detrimental to public health, safety, and general welfare given the inability to



United States District Court
Northern District of California

meet setback requirements and the "proximity to sensitive receptors"; (2) the finding that Vertical Bridge had failed to demonstrate that there were no feasible alternative sites or colocation opportunities; and (3) the finding that the design was inconsistent with visual and community character. Dkt. 37 at 18-19.

In response, Defendants point out that "[a] defendant need only show substantial evidence for one reason for denial, in view of the local regulations, rather than for each reason for the denial." Dkt. 42 at 18 (citing *City of Berkeley I*, 2023 WL 2648197, at *20). Therefore, in the present procedural posture, in order to obtain summary judgment on the substantial evidence issue, Plaintiffs must demonstrate that there is no genuine issue of triable fact as to whether there was substantial evidence support for *any* reason for denial.

Plaintiffs have failed to make that showing. Several genuine issues of triable fact preclude summary judgment on Plaintiffs' substantial evidence claim. The following are two examples of such disputed issues.

First, Plaintiffs argue that the "sensitive receptors" finding was in reality a finding based on concerns regarding radio-frequency ("RF") emissions from the project. Dkt. 37 at 20-22. As discussed above, 47 U.S.C. § 332(c)(7)(B)(iv) prohibits local governments from regulating wireless facilities based on their RF emissions, so long as those emissions are below the limits set by the FCC. The application for the project here included a certification that RF limits would be below the FCC limit. Dkt. 37-10. According to Plaintiffs, the Board's finding regarding "sensitive receptors" is therefore impermissible and not supported by substantial evidence. Dkt. 37 at 21-22. Specifically, Plaintiffs argue that the Board's denial was unlawfully based on RF concerns, pointing to language in the denial that acknowledged "community concerns regarding [RF] emission were raised during the public review process" and listed among the "negative impacts on property owners" "compatibility with the existing state-licensed daycare center" and the project's "close proximity to sensitive receptors" like the daycare center. Dkt. 37 at 21-22. Defendants deny that the "sensitive receptors" finding was based on RF concerns, pointing to language in the Board's denial that affirmatively states the decision was not based on RF concerns and identifies other reasons for the decision. Dkt. 42 at 20; *see also* Dkt. 37-11.

According to Defendants, "Plaintiffs' odd contention that 'sensitive receptors' is an RF proxy is a merits dispute, not an undisputed fact." *Id.*

Where, as here, some commenters mentioned RF concerns and the Board's denial mentions proximity to "sensitive receptors," but the Board repeatedly stated in the denial that it is not based on RF concerns, genuine issues of material fact preclude summary judgment in Plaintiffs' favor on the issue of whether there was substantial evidence support for the finding that the project was detrimental to public health, safety, and general welfare given the "proximity to sensitive receptors." *See, e.g., New Cingular Wireless PCS, LLC v. Cnty. of Marin, California*, No. 20-CV-07915-SI, 2021 WL 5407509, at *9 (N.D. Cal. Nov. 18, 2021) (granting summary judgment in favor of county on substantial evidence claim where members of the public raised concerns about RF emissions, but "at every stage of the administrative process the decisionmakers explicitly stated that the denial was not based on those concerns"); *Bay Area Cellular Tel. Co. v. City & Cnty. of San Francisco, California*, No. C 03-4866 PJH, 2005 WL 3157490, at *4 (N.D. Cal. Nov. 23, 2005) ("*Bay Area Cellular v. San Francisco*") (denying wireless company's motion for summary judgment and granting summary judgment in favor of city on claim that city improperly based decision on adverse health effects where board "expressly stated that its decision was *not* based on concerns over RF emissions" and carrier pointed only to "a small sample of testimony that only ambiguously lends support for its argument" (emphasis in original)).

Second, Plaintiffs advance two arguments as to why findings in the Board denial regarding visual and community character were not supported by substantial evidence: (1) the County Code and General Plan do not require Plaintiffs to have considered the project's impact on "private views"; and (2) the Board's findings that the project fails to minimize its visibility or use screening, disguising, or materials and colors that are compatible with the surrounding environment is directly contradicted by information in the Application and Staff Reports, yet the Board did not take that contradictory evidence into account and explain how, in its discretion, denial was warranted. Dkt. 37 at 24-25.

Plaintiffs' arguments regarding requirements under the County Code and General Plan cherry-pick references in those documents to views from public locations. *See* Dkt. 37 at 24.



United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiffs omit other sections of the relevant codes that allow broader aesthetic considerations. *See, e.g.,* Dkt. 38-2, County Code § 7.11.016(b) ("Freestanding monopoles shall be located and designed to minimize visual impacts"); Dkt. 38-3, County General Plan PFS-9.4 (preamble) ("The County shall require that the siting of the telecommunications facilities minimizes their visibility …"); Dkt. 38-3, County General Plan PFS-9.5 ("The County shall require that the design of telecommunications facilities (e.g., cabinets, buildings, antennas, security fencing) integrate into existing adjacent conditions and minimize visibility through the use of: appropriate colors, existing buildings and structures, screening, disguising, landscaping, and compatibility with surrounding structures and natural environments"). The County's interpretation of its own zoning laws "is entitled to great weight and should be respected by the court unless it is clearly erroneous or unauthorized." *Bay Area Cellular v. San Francisco*, 2005 WL 3157490, at *2 (citation omitted); *see also City of W. Covina*, 2023 WL 4422835, at *11–12 (finding substantial evidence in the record to support the City's denial of wireless company's application due to concerns regarding the proposed facility's stealthing and design despite proposed facility's compliance with city design standards and municipal code where city argued that compliance was necessary but not sufficient to obtain approval of project application).

The Ninth Circuit has recognized that factors such as "the height of the proposed tower, the proximity of the tower to residential structures, the nature of uses on adjacent and nearby properties, the surrounding topography, and the surrounding tree coverage and foliage" are "legitimate concerns for a locality" considering a special use permit. *City of Anacortes*, 572 F.3d at 994 (9th Cir. 2009). Under the circumstances here, Plaintiffs have not demonstrated that, as a matter of law, it was not proper for the Board to consider the project's visibility from private property.

Plaintiffs also argue that "the Board's findings that the Project fails to minimize its visibility or use screening, disguising, or materials and colors that are compatible with the surrounding environment is directly contradicted by information in the Application and the Staff Reports" yet the Board failed to "take that contradictory evidence into account and explain how, in its discretion, the Denial is warranted." Dkt. 37 at 25. However, the Board denial acknowledged

United States District Court
Northern District of California

that Plaintiffs had made efforts to minimize the visibility of the project. *See, e.g.,* Dkt. 37-11 at 5 (noting that Planning Commission found that the proposed siting "[l]acks sufficient visual mitigation when viewed from adjacent private properties, *even if partially screened from the public right-of way*" (emphasis added)). The Board also explained why its denial was nevertheless warranted. *See, e.g.*; *id.* at 7 ("all photo simulations provided by the applicant focused solely on views from the public right-of-way and did not address visual impacts from the private driveway leading to the facility or from nearby residences along that access route"); *id.* at 12 ("Substantial evidence supported the Commission's findings on visual incompatibility. The stealth monopine design did not adequately mitigate visual impacts, especially given the surrounding open space, low-rise development, and proximity to a scenic and conservation easement"). An applicant's submission of or citation to contrary evidence does not preclude a finding that "a reasonable mind" might find other record evidence adequate to support its conclusion. *See MetroPCS v. San Francisco*, 400 F.3d at 725.

Here, genuine disputes of material fact preclude summary judgment in Plaintiffs' favor on the claim that the County's denial is not supported by substantial evidence, and Plaintiffs' motion for summary judgment on that claim is **DENIED.**

**C. REMEDY**

As explained in section IV.A. above, Plaintiffs are entitled to summary judgment on their claim for effective prohibition of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). Plaintiffs argue that the appropriate remedy is an order requiring the County to grant the Application. Dkt. 37 at 25. Defendants assert that "Plaintiffs' requested remedy is improper" but base this argument on their position that Plaintiffs are not entitled to summary judgment. Dkt. 42 at 20-21. Defendants do not address what form of relief is appropriate if the Court grants Plaintiffs' motion for summary judgment. *See* Dkt. 42.

Though 47 U.S.C. § 332(c) does not specify a remedy for effective prohibition, the "appropriate remedy is injunctive relief in the form of an order to issue the relevant permits because injunctive relief best serves the [Act's] stated goal of expediting resolution of this type of action." *T-Mobile W. Corp. v. City of Huntington Beach*, No. 10-cv-2835 CAS EX, 2012 WL

4867775, at *19 (C.D. Cal. Oct. 10, 2012) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999)); *see also City of Anacortes*, 572 F.3d at 990, 999 (upholding district court's injunction in favor of the provider based on effective prohibition); *Cnty. of Ventura,* 2022 WL 22879626, at *6 (granting injunction ordering county to issue permit to provider as remedy for effective prohibition); *Los Angeles SMSA Ltd. P'ship v. City of Los Angeles*, No. 2:16-CV-04954-FLA (SKX), 2021 WL 3741539, at *14 (C.D. Cal. Aug. 24, 2021) (same); *GTE Mobilnet of Cal Ltd. P'ship v. City of Watsonville*, No. 16-cv-03987 NC, 2017 WL 492876, at * 4 (N.D. Cal. Feb. 7, 2017) (granting provider's motion for summary judgment on effective prohibition and enjoining city to approve carrier's application for proposed wireless communications facility).

Here, because Plaintiffs are entitled to summary judgment on their claim for effective prohibition, an injunction ordering the County to approve the project application is warranted.

## V. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiffs' motion for summary judgment on the first cause of action alleging that Defendants' denial was an effective prohibition of personal wireless services is **GRANTED**.
2. The Court **ORDERS** the Parties to meet and confer on the terms of an injunction requiring the County to approve Plaintiff Vertical Bridge's project application. By **December 4, 2026**, the Parties must file the proposed injunction and a proposed judgment. The proposed documents must accurately reflect the court's rulings and comply with all statutory requirements and court rules, including Fed. R. Civ. P. 65(d).
3. Plaintiffs' motion for summary judgment on the second cause of action alleging that Defendants' denial was not supported by substantial evidence is **DENIED**.
4. Defendants did not file a cross-motion seeking summary judgment or other relief in response to Plaintiffs' motion for summary judgment, but Defendants argue in their opposition brief that "the Court would be well within its discretion to *sua sponte*

dismiss the Complaint with prejudice." Dkt. 42 at 21. Whether this argument is construed as a request for dismissal or a request for summary judgment in Defendants' favor, Defendants' request is **DENIED** as both procedurally improper and substantively unwarranted.

**SO ORDERED.**

Dated: November 6, 2026

SUSAN VAN KEULEN
United States Magistrate Judge